Shields, J.
At the September (1916) term of the court of common pleas of Stark county, Ohio, the plaintiff in error was indicted by the grand jury of said county for the crime of manslaughter, and upon trial had the jury returned a verdict of not guilty of manslaughter but guilty of assault and battery. Thereupon a motion was filed to discharge the defendant below from further custody, on the ground that a verdict and judgment of assault and battery did not lie under said indictment, under the evidence in the case, which said motion was by the *464 court overruled, and thereupon the said defendant was sentenced according to law.
It appears that after a petition in error was filed in this court a motion was filed by the defendant in error to strike the same from the files, for the reason that no motion for a new trial, or motion in arrest of judgment, was filed in the court of common pleas after said verdict, and for other reasons therein stated, which said motion was by this court overruled. No cross-petition having been filed on behalf of the defendant in error, the sole question presented on the record for consideration is, therefore, the question made by the motion of the plaintiff in error to discharge him after verdict, as stated.
We do not feel called upon to review all the evidence in this case, nor is it necessary for a solution of the question presented, except to bear in mind such portions of it as have been referred to and regarded as material by counsel; for the contention made involves mainly, if not wholly, a question of law.
It appears that on August 29, 1916, the plaintiff in error, Joseph W. Jones, owned what is termed a seven-passenger Buick automobile, and that in the afternoon of said day while driving said automobile on the streets of the city of Canton he invited two girls, Gladys Crawford and Fay Carnes, one of whom he had met before that time and the other of whom was unknown to him, to take a ride, which invitation was accepted by them. That in returning from Massillon to Canton in said automobile on the Canton-Massillon road, going eastwardly, said automobile was driven by the said Gladys Crawford and the plain *465 tiff in error, who was riding in the front seat of said automobile by the side of the said Gladys Crawford; that at the same time on said day one B. L. Thomas, was driving westwardly on said road a Dodge automobile, with his wife and son and one Thomas Ellis, his father-in-law, therein; that at a point near to what is called Calvary Cemetery on said road said two automobiles traveling in opposite directions collided when the plaintiff in error was assisting the said Gladys Crawford in operating his said automobile; that at the time of said collision the said Thomas was driving his car at the rate of about fifteen miles per hour and the plaintiff in error was driving his said automobile greatly in excess of said rate of speed, and in violation of Sections 12603 and 12604, General Code, and that as a result of said collision the wife and son of said Thomas, and the said Thomas Ellis, were seriously injured, and that as a result of said collision and the injuries received by him through the alleged negligence, carelessness, and recklessness of the plaintiff in error the said Thomas Ellis on said day died.
Said Sections 12603 and 12604, General Code, were enacted by the legislature in the interest of public safety on public highways, and it requires no close analysis of the evidence in this record to show that the automobile of the plaintiff in error at the time of said accident was being operated in violation of the provisions of said sections. It appears that the speed said automobile was traveling at said time was not only unreasonable and unlawful but that said automobile was being recklessly *466 driven, hence it is laid down as a wholesome and sound proposition of law that “one who is engaged in the performance of an unlawful act must take the criminal consequences of whatever happens to third persons as a result of that act.” The necessity for the application and enforcement of this rule for the protection of life and limb is apparent when applied to the modern mode of travel upon the public highways and elsewhere. Automobiles may be employed as a means of travel, and they have become recognized as the popular means of travel upon the public highways and elsewhere, but like all other agencies thus employed, proper care and discretion should be exercised in their use. It requires no sophistry to persuade us that these high-powered machines were never intended to render life and limb secure upon the public highways, when under the control of an inexperienced 'novice, nor that the safety of others, perhaps traveling upon the same highway in an opposite direction, is rendered any more secure thereby. Regard for the safety of human life requires that automobiles when traveling upon the public highway, where people have the right to travel in their own way, should be under the control of persons capable of managing them and that they should be held to the observance of speed not in excess of that prescribed by the sections referred to. Commenting upon the need and propriety of legislation to be found in these two sections of our statutes, and of the urgent necessity of proper protection being afforded to life and limb against the indiscriminate and reckless operation of automobiles in the public highways and elsewhere, Judge Wanamaker, speaking for *467 the court, in the case of State v. Schaeffer, 96 Ohio St., 215, says at page 233:
“The first year for which official statistics are available as to the number of automobiles, operated on the public highways of this state is 1908, when 18,000 were in operation. To-day the total number is over 300,000. If there were need for some such statute in 1908, there is more than ten times the need of it to-day.
“Statisticians have calculated that when you vest average men with large power, you make either a tyrant or fool out of ten' per cent, of them. The estimate is very conservative. Indeed, if it err at all, it is upon the ground that it is too low, and it may well be doubted if the ratio is appreciably reduced in the case of putting 300,000 automobiles, with their tremendous speed, power and impact, under the direction and control, or lack thereof, of the usual drivers. Ten per cent, of the 300,000 would make 30,000 that are in the hands of tyrants, fools, incompetents, speed-maniacs, that are a constant menace and danger to the safe and conservative 90 per cent, of automobile drivers, to other vehicle drivers, and to the millions of foot passengers.
“ ‘Safety First/ must not be sacrificed for ‘speed first/
“The daily press is full of hairbreadth escapes and casualties, from slight injuries on the one hand to instant death on the other. It may well be said, ‘that the railroad locomotive has killed its hundreds, but the automobile is killing its thousands/
“The day has long been here when the authorities should exercise every power under every law *468 of the state to protect the safety of the public, its life, its limb; and in order to meet every possible situation of danger, some such general comprehensive and elastic statute as Section 12603 is absolutely necessary.
“The careful, conservative driver need have no fear of it. The reckless, wanton speed-maniac needs to be kept in fear of it. The life of the humblest citizen must be placed above the gratification of the motor-maniac who would turn the public highways into a race course. Mere civil liabilities are not sufficient to protect the public. Five dollars fine and costs is a joke in most cases.
“Some statutes have undertaken to fix a rate of speed which would be prima facie dangerous, but a rate of speed dangerous in one situation would be quite safe in another situation, and if the rate of speed were definitely fixed, naturally it would have to be the minimum speed at which cars might be safely driven, because that speed would have to be a safeguard against every possible situation which would be perilous, even at a speed of six or eight miles an hour.
“There is no place in all the public grounds and parks where a situation is not constantly changing from comparatively no traffic to a most congested traffic; from no foot travelers to a throng of them; from open and clear intersections, private drives and street crossings, to those that are crowded; from free and unobstructed streets to streets filled with crowds of foot travelers and others getting off and on street cars and other vehicles. In order to meet these varying situations and impose upon the automobilist the duty of anticipating them and *469 guarding against the dangers that arise out of them, this statute was evidently passed in the interests of the public safety in a public highway.”
Here, as claimed by the state, and as. we think the evidence shows, the plaintiff in error was engaged in an unlawful act, prohibited by the statute law of Ohio, at the time of said collision, when Thomas Ellis was injured, from the effects of which he died. His unlawful act was the violation of said sections. He was afterwards indicted for manslaughter, and found guilty of assault and battery only, and sentenced therefor. It is contended in his behalf that the trial court erred in instructing the jury that they were authorized to return a verdict of assault and battery, if the facts warranted such verdict, and, further, in overruling the motion for his discharge from further custody after said verdict, and that the judgment and sentence upon said verdict of the jury for assault and battery is therefore a nullity. Error is prosecuted to reverse said judgment.
Under our statutes criminal homicide consists of different degrees, and murder in either the first or second degree may be reduced to manslaughter, or even to an assault and battery or an assault, in a proper case, upon the theory that the lesser is included in the greater of the crimes charged. This theory at an early day foúnd its way into the criminal jurisprudence of this country, and has since been generally if not universally recognized and adopted as a sound and safe principle to apply in the administration of the criminal law. Citation of authorities is not necessary to show that in this state it has been so recognized and repeatedly de *470 dared by the courts. While admitting that the principle is sound as applied to cases generally,' it is urged on the part of counsel for the plaintiff in error that under the evidence in this case the crime here committed, if any was committed, was manslaughter, and that only, and that the element of assault and battery was entirely foreign to the case. It appears that no objection was made or special exception taken to the charge of the trial court at the time said charge was given to the jury, except a general one, including an exception to the refusal of the court to give certain special requests submitted on behalf of the defendant below before argument. In passing, and by way of referring to the contention of counsel, it may be said that if the deliberation of the jury had been controlled by the logic of the evidence and the charge of the court, another and different verdict might have been returned by the jury, but we are admonished by the repeated holdings of our supreme court that the jury are the sole judges of the facts, when a case is presented to them, under proper instructions by the court. Not that it necessarily follows that the jury are always right and that their action may not be reviewed and corrected by the court in a proper case, but it goes unchallenged that their latitude of inquiry and judgment upon the facts, under the issues raised, is not circumscribed by the limitations of any rule. True, the issue raised should be kept in mind and not lost sight of by the jury when considering the evidence, and a verdict unsupported by any evidence should not be allowed to stand; but in a case “where the evidence justifies it,” with the jury acting under express instructions of the trial *471 court, will it be said that the action of the jury in returning a verdict of guilty of assault and battery in a manslaughter case should be disregarded and ignored ? Scarcely, in view of past precedents resting upon adjudications crystallized into recognized law since the organization of courts. There may be cases where courts have refused to disturb verdicts because the character of the case forbade the submission of a lesser degree than that charged in an indictment, but not so, under the investigation we have made, when without objection a lesser degree, is expressly and properly authorized by the charge of the trial court.
Section 13692 provides that “When the indictment charges an offense including different degrees, the jury may find the defendant not guilty of the degree charged and guilty of an inferior degree thereof.”
As if acting under the authority conferred by this statute, the trial court, among other things, charged the jury as follows:
“So that, if you fail to find from the evidence beyond the existence of a reasonable doubt that the defendant is guilt of the crime of manslaughter, you may then go forward and find whether or not the'evidence satisfies you beyond the existence of a reasonable doubt that defendant is guilty of the offense of assault and battery, or of assault. Therefore, if you find beyond the existence of a reasonable doubt that the defendant, Joseph W. Jones, at the county of Stark and in the state of Ohio, on or about the 29th day of August, 1916, unlawfully committed an assault and battery upon Thomas Ellis, then and there being, then you should return *472 a verdict of guilty of the offense of an assault and battery. If the evidence fails .to so show, then you should return a verdict for defendant, to-wit, not guilty of an assault and battery. If the evidence fails to show beyond a reasonable doubt that defendant on or about the date named in the indictment committed unlawfully an assault upon Thomas Ellis, then and there being, then you should return a verdict of guilty of assault. If you fail to so find, your verdict should be not guilty of assault. If the evidence fails to satisfy you beyond the existence of a reasonable doubt of the offense of manslaughter, assault and battery, or assault, your verdict should be for the defendant, to-wit, not guilty. * * *
“The indictment for manslaughter includes within its terms the lesser offense of assault and battery, and under Sec. 13692 G. C. of Ohio, the jury may find a defendant guilty of such inferior and lesser offense, if the evidence warrants, and only warrants such conviction. But notwithstanding such right of the jury, it is the duty of the jury to receive the law as given to it by the court, and if the facts proved are such as to make the offense manslaughter as hereinbefore defined and explained to you and warrants a conviction thereof under these instructions, it is the sworn duty of the jury to make such finding, without reference to their power to find a lesser offense to which they might be influenced, by something extraneous to the real facts as found by them. The law does not include these lesser offenses of assault and battery and assault in order to relieve the jury from the performance of what might otherwise be a disagreeable or *473 unpleasant duty, or to reach a compromise verdict and enable them to evade their sworn duty by finding a lesser offense simply because they may, but it is held proper so that there may not be .a failure of justice if the evidence did not sustain the offense charged in the indictment, but would support a finding of guilty of a lesser offense than the one charged in the indictment.”
Here the jury was duly cautioned against losing sight of the material issue in the case and of their obligations as sworn jurors to fearlessly meet and discharge duty. That the admonition thus given was both direct and pertinent admits of no question, but how the facts in the case were regarded and treated by the jury in the jury room we do not know, except as shown by the verdict. It cannot be said that the jury acted contrary to the instructions of the court, if in their judgment a verdict of assault and battery was warranted by the facts, because the court expressly so instructed them. But counsel on behalf of the plaintiff in error argue that the death of Ellis, was caused by the collision, and therefore the crime was manslaughter, if anything, relying in support of their contention on the cases of State v. Vancak, 90 Ohio St., 211, and State v. Schaeffer, 96 Ohio St., 215. It appears that the first case mentioned involved the defense of self-defense. Logically and legally the defendant in that case was either guilty of the crime charged— manslaughter—or not guilty of any other crime. There was no pretense of any claim made but that death resulted from the blow struck, and indeed the killing was admitted by the defendant. The rule of law announced in that case is far from be *474 ing applicable to the facts in the case before us for review, in our judgment. In that case there was no issue raised as to the cause of death. In the Schaeffer case, too, there the killing of the child was admitted, but the defendant contended that he was not criminally liable because he was not violating the speed ordinance at the time; unlike the case before us, where the plaintiff in error claims that the death of Ellis was caused by the unlawful conduct of Thomas in not observing the rules of the road, which was denied by the state. While the plaintiff in error denied that his car was being driven recklessly or in excess of a lawful rate of speed at the time of the collision, the state contends that it was so driven. So here was an issue and here was a conflict of evidence on the question as to how the collision occurred and who was responsible for it—a question of fact to be determined by the jury. In the cases cited the killing and the facts ■ and circumstances leading up to the death were admitted, but not so here. While the fact that death was the result of the collision is admitted, the facts causing the collision are disputed. The isolated fact of death resulting from the collision does not answer or satisfy the question at issue, but the question remains, who and what caused the collision? Leaving out the evidence that after the collision Ellis’ body was placed on the side of the highway and there suffered to remain until it was placed in an automobile, and later transferred to an ambulance to be conveyed to the Massillon Hospital several miles distant, and that death resulted en route, leaving out these circumstances, which were before the jury and the effect of which was for the *475 determination of the j’ury, it would seem that the finding of the jury was referable to the manner of driving the automobile of the plaintiff in error, and its speed at the time of said collision.
In his behalf counsel for plaintiff in error also refer to the case of Marts v. State, 26 Ohio St., 162. In this cáse the defense was self-defense, and it appears that the defendant requested the trial court to instruct the jury that they might return a verdict of assault and battery, if the facts warranted it, which request was refused; but the supreme court says, at page 168, “that the court should have instructed the jury, as requested, that it was competent for them, if, in their opinion, the evidence justified it, to find.the defendant guilty of assault and battery only, and that the refusal of the court to give such an instruction was error to the prejudice of the defendant.”
While juries sometimes differ in their judgments, and reach different conclusions upon the same state of facts, as do courts, nevertheless, whatever the judgment of this court of the merits of this case and of the verdict of the jury, we are not unmindful that facts are the exclusive property of the jury to deal with and that the constitutional right of trial by jury is still “the great safeguard of life, liberty and property.” Discussing the institution of trial by jury, Judge Ranney fittingly refers to it as “the glory of the English law,” and as an important and integral part of our system of jurisprudence. In Gibbs v. Girard, 88 Ohio St., 34, 47, Judge Wanamaker also says:
“So long as the trial by jury is a part of our system of jurisprudence its constitutional integrity and *476 importance should be jealously safeguarded. The right of trial by jury should be as inviolate in the working of our courts as it is in the wording of our constitutions,”
For the reasons stated, we think the trial court was authorized to submit to the jury the question whether or not the defendant below was guilty of manslaughter or assault and battery, under the evidence in the case, and in so instructing the jury said court did not err, nor did said court err in overruling the motion to discharge the said Jones from further custody after said verdict of assault and battery was rendered.
While the requests made before argument to the jury were not argued to this court, nor even referred to, it is sufficient to say that we have examined all the grounds, of error assigned, and, keeping in mind the uniform rule of the courts in this state that judgments of conviction are not to be set aside except “in cases where the grounds of error are clear and the error manifestly prejudicial,” we find no such prejudicial error in the record as to require a reversal of the judgment of the court of common pleas, and said judgment of said court will therefore be affirmed and said cause remanded to said court for execution.

Judgment affirmed.

Powell and Houck, JJ., concur.